## SETTLEMENT AGREEMENT AND
## FULL AND FINAL RELEASE OF ALL CLAIMS

1.  This Agreement covers all understandings between Rebecca C. Wiles (hereinafter referred to as "Wiles," a term which includes Wiles's successors, assigns, beneficiaries, personal representatives, and heirs) and Palm Springs Grill, LLC (hereinafter referred to as "PSG," a term which includes each and every of its officers, directors, shareholders, employees, agents (within the scope of such agency), partners, parent corporations and companies, affiliates, subsidiaries, and divisions, as of the date hereof, and their successors, assigns, beneficiaries, servants, legal representatives, insurers, reinsurers, and heirs).

2.  For and in consideration of the promises outlined in Paragraph 3 of this Agreement, Wiles agrees as follows:

    A.  That this Settlement Agreement is one of three (3) and it is expressly understood that this Settlement Agreement is contingent upon Settlement Agreements being fully executed by Ashley Howell and Michea Dixon, and approved by the Court.

    B.  To settle any and all claims and actions of any nature whatsoever, accrued as of the date of this Agreement between Wiles and PSG, Robert Ciceroni, and Carran Schneider, third-party beneficiaries, and release and forever discharge PSG, Robert Ciceroni, and Carran Schneider, third-party beneficiaries, of and from all and any manner of actions, causes of actions, suits, rights to attorney fees, debts, claims and demands whatsoever in law or equity by reason of any matter, cause or thing whatsoever, accrued as of the date hereof, and particularly, but without limitation of the foregoing general terms, by reason of any claims or actions arising from Wiles's alleged previous employment or separation from employment with PSG, or related to the transactions or matters which are the subject matter of the lawsuit titled <u>Rebecca C. Wiles v. Palm Springs Grill LLC, et al.</u>, Case No. 15-cv-81597-KAM, filed in the United States District Court for the Southern District of Florida, including without limitation any claims arising from any alleged violation of any and all federal, state, or local laws, including the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991; the Employee Retirement Income Security Act; the Equal Pay Act; the Americans with Disabilities Act of 1990; the Family and Medical Leave Act; the Fair Labor Standards Act; the Florida Civil Rights Act; any and all claims for breach of contract, breach of the covenant of good faith and fair dealing; infliction of emotional distress; wrongful discharge; violation of public policy; defamation; libel; invasion of privacy; claims for unpaid wages; or any other tort; workers' compensation retaliation claims, and any and all common law claims, accrued as of the date hereof. This is not a complete list, and, except as specified below, Employee waives and releases all similar rights and claims under all other federal, state, and local discrimination provisions and all other statutory and common law causes of action or administrative claims relating in any way to Employee's previous employment or any termination of employment with Employer, existing at any time prior to this Agreement, whether known or unknown, from the

SETTLEMENT AGREEMENT AND RELEASE                              RW
                                                              RW
                          PAGE 1                         Wiles's Initials



beginning of the world until the date of this Agreement. Except as otherwise may be provided in the Agreement, it is understood and agreed that this is a full, complete and final general release of any and all claims described as aforesaid, and that the Parties agree that it shall apply to all unknown, unanticipated, unsuspected and undisclosed claims, demands, liabilities, actions or causes of action, in law, equity or otherwise, as well as those which are now known, anticipated, suspected or disclosed, accrued as of the date hereof.

C. That she has not filed any charge, complaint, or lawsuit over, about or related to any of the Claims referred to in Paragraph "A." other than the lawsuit titled Rebecca C. Wiles v. Palm Springs Grill LLC, et al., Case No. 15-cv-81597-KAM.

D. To file a Joint Motion for Approval of Settlement and Dismissal with Prejudice in the lawsuit titled Rebecca C. Wiles v. Palm Springs Grill LLC, et al., Case No. 15-cv-81597-KAM.

E. To complete an IRS W-9 form and to have her attorney complete an IRS W-9 form with respect to the settlement payments and to return those forms along with an executed copy of this Agreement to counsel for PSG.

F. That payment by PSG pursuant to Paragraph 3 of this Agreement is not due and payable until fourteen (14) business days after the District Court issues an Order dismissing Wiles's claims in the lawsuit Rebecca C. Wiles v. Palm Springs Grill LLC, et al., Case No. 15-cv-81597-KAM, with prejudice and PSG's counsel, David A. Buchsbaum, receives the IRS W-9 forms completed and signed by Wiles and her attorney. The Parties agree that no interest shall accrue on said payment.

G. That this settlement is the compromise of a disputed claim and does not constitute an admission by PSG, Robert Ciceroni, or Carran Schneider of any violation of any federal, state, or local statute or regulation, or any violation of any of Wiles's rights or of any duty owed by PSG or Robert Ciceroni, or Carran Schneider. Wiles further agrees and acknowledges that upon payment of the consideration set forth in Section 3 below, she has been fully paid for all hours worked, and that, except for payment under paragraph 3, no other compensation, vacation pay, sick pay, overtime pay, liquidated damages, or any other money is owed to her.

H. That she represents and warranties that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of PSG, Robert Ciceroni, and/or Carran Schneider to any persons, including but not limited to current or former customers and employees, or members of the media.

I. To waive her right to future employment with PSG or any business owned in whole or in part by Robert Ciceroni or Carran Schneider and to agree not to knowingly reapply for employment with PSG or any business owned in whole or

in part by Robert Ciceroni or Carran Schneider. Wiles agrees and acknowledges that her signature on this Agreement is grounds for immediate rejection of any application for employment submitted by her. Wiles also expressly agrees that should PSG, Robert Ciceroni, or Carran Schneider acquire an entity for which she is employed that she will resign effective immediately and that she has no rights to employment by PSG, Robert Ciceroni, or Carran Schneider.

J. Not to communicate the terms, conditions, or contents of this Agreement to any person or entity in any manner, whether directly or indirectly, without express written consent from PSG authorizing the particular disclosure requested, except that she may communicate the terms of this Agreement to her spouse, financial advisors, and legal counsel, all of whom shall be advised by her before such disclosure that the terms of the Agreement shall not be disclosed by them to any person, unless required by law. Any unauthorized disclosure by such persons shall be deemed a breach of this Agreement by Wiles. This provision shall not, however, prohibit Wiles from disclosing the terms and conditions of this Agreement if (a) required to do so by court order, provided that any court-ordered disclosure shall only be made to the extent ordered, and only after notice has been given in writing by Wiles to PSG in order to allow PSG reasonable and sufficient time to obtain an appropriate protective order preventing or restricting such disclosure; (b) as may be necessary to accomplish the filing of income tax returns or to fulfill any other legal obligations to the Internal Revenue Service or other federal or state taxing authorities; or (c) as may be necessary to enforce the terms of this Agreement. Wiles, however, may disclose that her claims against PSG, Robert Ciceroni, and Carran Schneider have been resolved by agreement of the parties. Wiles agrees that PSG shall be entitled to liquidated damages in the amount of $5,000.00 per violation proven in any civil action, in addition to any other legal or equitable remedies, in the event that Wiles breaches this provision. The payment by Wiles of liquidated damages pursuant to this paragraph does not release Wiles from the promises she has made in this Agreement.

K. That Wiles is solely and entirely responsible for the payment of any and all taxes, if any, which may be found to be due on the amounts paid under Section 3 below. Wiles also agrees to indemnify and hold PSG harmless against any claim for taxes or related penalties or interest, and attorneys' fees and costs expended by PSG in connection with the amounts paid under Section 3 below in any action against Wiles necessary for indemnification of such taxes, penalties, or interest. Wiles acknowledges that PSG has not made any representation regarding the taxability of the settlement funds.

3. For and in consideration of the promises outlined in Paragraph 2 of this Agreement, PSG agrees to pay Wiles the total sum of Two Thousand Eight Hundred Thiety-Three Dollars and 34 Cents ($2,833.34), payment to be made as follows:

A. $1,700.00 payable to Wiles; and

B.  $1,133.34 payable to Kenner + Imparato PLLC, representing attorneys' fees and costs.

Other than the amount set forth in 3.B. above, each party is to bear its own attorney's fees and costs in this matter.

4. In the event that any party commences an action for damages, injunctive relief, or to enforce the provisions of the Agreement, the prevailing party in any such action shall be entitled to an award of its reasonable attorney's fees and all costs including appellate fees and costs, incurred in connection therewith as determined by the court in any such action.

5. Medicare Obligations:

A.  This settlement is based upon a good faith determination of the parties to resolve a disputed claim. The parties have not shifted responsibility of medical treatment to Medicare in contravention of 42 U.S.C. Sec. 1395y(b). The parties resolved this matter in compliance with both state and federal law. The parties made every effort to adequately protect Medicare's interest and incorporate such into the settlement terms.

B.  Wiles warrants that Wiles is not a Medicare beneficiary as of the date of this release. Because Wiles is not a Medicare recipient as of the date of this release, no conditional payments have been made by Medicare.

C.  Wiles will indemnify, defend and hold PSG harmless from any and all claims, liens, Medicare conditional payments and rights to payment, known or unknown. If any governmental entity, or anyone acting on behalf of any governmental entity, seeks damages including multiple damages from PSG relating to payment by such governmental entity, or anyone acting on behalf of such governmental entity, relating to Wiles's alleged injuries, claims or lawsuit, Wiles will defend and indemnify PSG, and hold PSG harmless from any and all such damages, claims, liens, Medicare conditional payments and rights to payment, including any attorneys' fees sought by such entities.

6. No cancellation, modification, amendment, deletion, addition, or other changes in this Agreement or any provision hereof or any right herein provided shall be effective for any purpose unless specifically set forth in a subsequent written agreement signed by Wiles and an authorized representative of PSG.

7. If any provision(s) of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be curtailed and limited only to the extent necessary to bring it within the requirements of the law. In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof. In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

SETTLEMENT AGREEMENT AND RELEASE                                    RW
                                                                    RW
PAGE 4                                                         Wiles's Initials

8. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach of any party, nor shall any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

9. The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement. Venue for any action for damages, injunctive relief, or to enforce the provisions of the Agreement, shall be West Palm Beach County, Florida.

10. In signing this Agreement, Wiles agrees and certifies that: (a) she has carefully read and fully understands the provisions of this Agreement; (b) that PSG and Robert Ciceroni have, by this Agreement, advised her to consult with an attorney of her choice before signing this Agreement, and she has had an opportunity to do so; (c) she has been allowed a reasonable period of time in which to consider this Agreement before signing; (d) she agrees to the terms of this Agreement knowingly, voluntarily and without intimidation, coercion or pressure, and she intends to be legally bound by the Agreement; and (e) having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this Settlement Agreement, Wiles agrees that this Settlement Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

11. This Agreement is executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument. Electronic and facsimile signatures shall be deemed effective as original signatures.

12. PSG has duly authorized this Agreement and authorized the signatory below to sign on its behalf as a valid and binding act of PSG, and PSG does intend to be so bound by this Agreement

DATE: Jan 25, 2017           Signature: _Rebecca Wiles (Jan 25, 2017)_
                                        Rebecca C. Wiles

DATE: 1-12-17                Signature: _____
                                        For Palm Springs Grill, LLC

# SETTLEMENT AGREEMENT AND
# FULL AND FINAL RELEASE OF ALL CLAIMS

1.   This Agreement covers all understandings between Michea Dixon (hereinafter referred to as "Dixon," a term which includes Dixon's successors, assigns, beneficiaries, personal representatives, and heirs) and Palm Springs Grill, LLC (hereinafter referred to as "PSG," a term which includes each and every of its officers, directors, shareholders, employees, agents (within the scope of such agency), partners, parent corporations and companies, affiliates, subsidiaries, and divisions, as of the date hereof, and their successors, assigns, beneficiaries, servants, legal representatives, insurers, reinsurers, and heirs).

2.   For and in consideration of the promises outlined in Paragraph 3 of this Agreement, Dixon agrees as follows:

   A.   That this Settlement Agreement is one of three (3) and it is expressly understood that this Settlement Agreement is contingent upon Settlement Agreements being fully executed by Rebecca C. Wiles and Ashley Howell, and approved by the Court.

   B.   To settle any and all claims and actions of any nature whatsoever, accrued as of the date of this Agreement between Dixon and PSG, Robert Ciceroni, and Carran Schneider, third-party beneficiaries, and release and forever discharge PSG, Robert Ciceroni, and Carran Schneider, third-party beneficiaries, of and from all and any manner of actions, causes of actions, suits, rights to attorney fees, debts, claims and demands whatsoever in law or equity by reason of any matter, cause or thing whatsoever, accrued as of the date hereof, and particularly, but without limitation of the foregoing general terms, by reason of any claims or actions arising from Dixon's alleged previous employment or separation from employment with PSG, or related to the transactions or matters which are the subject matter of the lawsuit titled <u>Rebecca C. Wiles v. Palm Springs Grill LLC, et al.</u>, Case No. 15-cv-81597-KAM, filed in the United States District Court for the Southern District of Florida, including without limitation any claims arising from any alleged violation of any and all federal, state, or local laws, including the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991; the Employee Retirement Income Security Act; the Equal Pay Act; the Americans with Disabilities Act of 1990; the Family and Medical Leave Act; the Fair Labor Standards Act; the Florida Civil Rights Act; any and all claims for breach of contract, breach of the covenant of good faith and fair dealing; infliction of emotional distress; wrongful discharge; violation of public policy; defamation; libel; invasion of privacy; claims for unpaid wages; or any other tort; workers' compensation retaliation claims, and any and all common law claims, accrued as of the date hereof. This is not a complete list, and, except as specified below, Employee waives and releases all similar rights and claims under all other federal, state, and local discrimination provisions and all other statutory and common law causes of action or administrative claims relating in any way to Employee's previous employment or any termination of employment with Employer, existing

_MCD_
SETTLEMENT AGREEMENT AND RELEASE                                    Mcd
                              PAGE 1                       Dixon's Initials


EXHIBIT 2

at any time prior to this Agreement, whether known or unknown, from the beginning of the world until the date of this Agreement. Except as otherwise may be provided in the Agreement, it is understood and agreed that this is a full, complete and final general release of any and all claims described as aforesaid, and that the Parties agree that it shall apply to all unknown, unanticipated, unsuspected and undisclosed claims, demands, liabilities, actions or causes of action, in law, equity or otherwise, as well as those which are now known, anticipated, suspected or disclosed, accrued as of the date hereof.

C. That she has not filed any charge, complaint, or lawsuit over, about or related to any of the Claims referred to in Paragraph "A." other than the lawsuit titled Rebecca C. Wiles v. Palm Springs Grill LLC, et al., Case No. 15-cv-81597-KAM.

D. To file a Joint Motion for Approval of Settlement and Dismissal with Prejudice in the lawsuit titled Rebecca C. Wiles v. Palm Springs Grill LLC, et al., Case No. 15-cv-81597-KAM.

E. To complete an IRS W-9 form and to have her attorney complete an IRS W-9 form with respect to the settlement payments and to return those forms along with an executed copy of this Agreement to counsel for PSG.

F. That payment by PSG pursuant to Paragraph 3 of this Agreement is not due and payable until fourteen (14) business days after the District Court issues an Order dismissing Dixon's claims in the lawsuit Rebecca C. Wiles v. Palm Springs Grill LLC, et al., Case No. 15-cv-81597-KAM, with prejudice and PSG's counsel, David A. Buchsbaum, receives the IRS W-9 forms completed and signed by Dixon and her attorney. The Parties agree that no interest shall accrue on said payment.

G. That this settlement is the compromise of a disputed claim and does not constitute an admission by PSG, Robert Ciceroni, or Carran Schneider of any violation of any federal, state, or local statute or regulation, or any violation of any of Dixon's rights or of any duty owed by PSG or Robert Ciceroni, or Carran Schneider. Dixon further agrees and acknowledges that upon payment of the consideration set forth in Section 3 below, she has been fully paid for all hours worked, and that, except for payment under paragraph 3, no other compensation, vacation pay, sick pay, overtime pay, liquidated damages, or any other money is owed to her.

H. That she represents and warranties that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of PSG, Robert Ciceroni, and/or Carran Schneider to any persons, including but not limited to current or former customers and employees, or members of the media.

I. To waive her right to future employment with PSG or any business owned in whole or in part by Robert Ciceroni or Carran Schneider and to agree not to

knowingly reapply for employment with PSG or any business owned in whole or in part by Robert Ciceroni or Carran Schneider. Dixon agrees and acknowledges that her signature on this Agreement is grounds for immediate rejection of any application for employment submitted by her. Dixon also expressly agrees that should PSG, Robert Ciceroni, or Carran Schneider acquire an entity for which she is employed that she will resign effective immediately and that she has no rights to employment by PSG, Robert Ciceroni, or Carran Schneider.

J.  Not to communicate the terms, conditions, or contents of this Agreement to any person or entity in any manner, whether directly or indirectly, without express written consent from PSG authorizing the particular disclosure requested, except that she may communicate the terms of this Agreement to her spouse, financial advisors, and legal counsel, all of whom shall be advised by her before such disclosure that the terms of the Agreement shall not be disclosed by them to any person, unless required by law. Any unauthorized disclosure by such persons shall be deemed a breach of this Agreement by Dixon. This provision shall not, however, prohibit Dixon from disclosing the terms and conditions of this Agreement if (a) required to do so by court order, provided that any court-ordered disclosure shall only be made to the extent ordered, and only after notice has been given in writing by Dixon to PSG in order to allow PSG reasonable and sufficient time to obtain an appropriate protective order preventing or restricting such disclosure; (b) as may be necessary to accomplish the filing of income tax returns or to fulfill any other legal obligations to the Internal Revenue Service or other federal or state taxing authorities; or (c) as may be necessary to enforce the terms of this Agreement. Dixon, however, may disclose that her claims against PSG, Robert Ciceroni, and Carran Schneider have been resolved by agreement of the parties. Dixon agrees that PSG shall be entitled to liquidated damages in the amount of $5,000.00 per violation proven in any civil action, in addition to any other legal or equitable remedies, in the event that Dixon breaches this provision. The payment by Dixon of liquidated damages pursuant to this paragraph does not release Dixon from the promises she has made in this Agreement.

K.  That Dixon is solely and entirely responsible for the payment of any and all taxes, if any, which may be found to be due on the amounts paid under Section 3 below. Dixon also agrees to indemnify and hold PSG harmless against any claim for taxes or related penalties or interest, and attorneys' fees and costs expended by PSG in connection with the amounts paid under Section 3 below in any action against Dixon necessary for indemnification of such taxes, penalties, or interest. Dixon acknowledges that PSG has not made any representation regarding the taxability of the settlement funds.

3.  For and in consideration of the promises outlined in Paragraph 2 of this Agreement, PSG agrees to pay Dixon the total sum of Two Thousand Eight Hundred Thirty-Three Dollars and 33 Cents ($2,833.33), payment to be made as follows:

A.  $1,700.00 payable to Dixon; and

B. $1,133.33 payable to Kenner + Imparato PLLC, representing attorneys' fees and costs.

Other than the amount set forth in 3.B. above, each party is to bear its own attorney's fees and costs in this matter.

4. In the event that any party commences an action for damages, injunctive relief, or to enforce the provisions of the Agreement, the prevailing party in any such action shall be entitled to an award of its reasonable attorney's fees and all costs including appellate fees and costs, incurred in connection therewith as determined by the court in any such action.

5. Medicare Obligations:

A. This settlement is based upon a good faith determination of the parties to resolve a disputed claim. The parties have not shifted responsibility of medical treatment to Medicare in contravention of 42 U.S.C. Sec. 1395y(b). The parties resolved this matter in compliance with both state and federal law. The parties made every effort to adequately protect Medicare's interest and incorporate such into the settlement terms.

B. Dixon warrants that Dixon is not a Medicare beneficiary as of the date of this release. Because Dixon is not a Medicare recipient as of the date of this release, no conditional payments have been made by Medicare.

C. Dixon will indemnify, defend and hold PSG harmless from any and all claims, liens, Medicare conditional payments and rights to payment, known or unknown. If any governmental entity, or anyone acting on behalf of any governmental entity, seeks damages including multiple damages from PSG relating to payment by such governmental entity, or anyone acting on behalf of such governmental entity, relating to Dixon's alleged injuries, claims or lawsuit, Dixon will defend and indemnify PSG, and hold PSG harmless from any and all such damages, claims, liens, Medicare conditional payments and rights to payment, including any attorneys' fees sought by such entities.

6. No cancellation, modification, amendment, deletion, addition, or other changes in this Agreement or any provision hereof or any right herein provided shall be effective for any purpose unless specifically set forth in a subsequent written agreement signed by Dixon and an authorized representative of PSG.

7. If any provision(s) of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be curtailed and limited only to the extent necessary to bring it within the requirements of the law. In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof. In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

**SETTLEMENT AGREEMENT AND RELEASE**                           *MCD*
                                                                Mcd
                          PAGE 4                          Dixon's Initials

8. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach of any party, nor shall any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

9. The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement. Venue for any action for damages, injunctive relief, or to enforce the provisions of the Agreement, shall be West Palm Beach County, Florida.

10. In signing this Agreement, Dixon agrees and certifies that: (a) she has carefully read and fully understands the provisions of this Agreement; (b) that PSG and Robert Ciceroni have, by this Agreement, advised her to consult with an attorney of her choice before signing this Agreement, and she has had an opportunity to do so; (c) she has been allowed a reasonable period of time in which to consider this Agreement before signing; (d) she agrees to the terms of this Agreement knowingly, voluntarily and without intimidation, coercion or pressure, and she intends to be legally bound by the Agreement; and (e) having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this Settlement Agreement, Dixon agrees that this Settlement Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

11. This Agreement is executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument. Electronic and facsimile signatures shall be deemed effective as original signatures.

12. PSG has duly authorized this Agreement and authorized the signatory below to sign on its behalf as a valid and binding act of PSG, and PSG does intend to be so bound by this Agreement

DATE: Jan 25, 2017          Signature: _Michea Dixon (Jan 25, 2017)_
                                       Michea Dixon

DATE: 1-12-17              Signature: _____
                                       For Palm Springs Grill, LLC

# SETTLEMENT AGREEMENT AND
# FULL AND FINAL RELEASE OF ALL CLAIMS

1.  This Agreement covers all understandings between Ashley Howell (hereinafter referred to as "Howell," a term which includes Howell's successors, assigns, beneficiaries, personal representatives, and heirs) and Palm Springs Grill, LLC (hereinafter referred to as "PSG," a term which includes each and every of its officers, directors, shareholders, employees, agents (within the scope of such agency), partners, parent corporations and companies, affiliates, subsidiaries, and divisions, as of the date hereof, and their successors, assigns, beneficiaries, servants, legal representatives, insurers, reinsurers, and heirs).

2.  For and in consideration of the promises outlined in Paragraph 3 of this Agreement, Howell agrees as follows:

    A.  That this Settlement Agreement is one of three (3) and it is expressly understood that this Settlement Agreement is contingent upon Settlement Agreements being fully executed by Rebecca C. Wiles and Michea Dixon, and approved by the Court.

    B.  To settle any and all claims and actions of any nature whatsoever, accrued as of the date of this Agreement between Howell and PSG, Robert Ciceroni, and Carran Schneider, third-party beneficiaries, and release and forever discharge PSG, Robert Ciceroni, and Carran Schneider, third-party beneficiaries, of and from all and any manner of actions, causes of actions, suits, rights to attorney fees, debts, claims and demands whatsoever in law or equity by reason of any matter, cause or thing whatsoever, accrued as of the date hereof, and particularly, but without limitation of the foregoing general terms, by reason of any claims or actions arising from Howell's alleged previous employment or separation from employment with PSG, or related to the transactions or matters which are the subject matter of the lawsuit titled <u>Rebecca C. Wiles v. Palm Springs Grill LLC, et al.</u>, Case No. 15-cv-81597-KAM, filed in the United States District Court for the Southern District of Florida, including without limitation any claims arising from any alleged violation of any and all federal, state, or local laws, including the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991; the Employee Retirement Income Security Act; the Equal Pay Act; the Americans with Disabilities Act of 1990; the Family and Medical Leave Act; the Fair Labor Standards Act; the Florida Civil Rights Act; any and all claims for breach of contract, breach of the covenant of good faith and fair dealing; infliction of emotional distress; wrongful discharge; violation of public policy; defamation; libel; invasion of privacy; claims for unpaid wages; or any other tort; workers' compensation retaliation claims, and any and all common law claims, accrued as of the date hereof. This is not a complete list, and, except as specified below, Employee waives and releases all similar rights and claims under all other federal, state, and local discrimination provisions and all other statutory and common law causes of action or administrative claims relating in any way to Employee's previous employment or any termination of employment with Employer, existing

SETTLEMENT AGREEMENT AND RELEASE

PAGE 1

Howell's Initials: *Ah*



at any time prior to this Agreement, whether known or unknown, from the beginning of the world until the date of this Agreement. Except as otherwise may be provided in the Agreement, it is understood and agreed that this is a full, complete and final general release of any and all claims described as aforesaid, and that the Parties agree that it shall apply to all unknown, unanticipated, unsuspected and undisclosed claims, demands, liabilities, actions or causes of action, in law, equity or otherwise, as well as those which are now known, anticipated, suspected or disclosed, accrued as of the date hereof.

C. That she has not filed any charge, complaint, or lawsuit over, about or related to any of the Claims referred to in Paragraph "A." other than the lawsuit titled Rebecca C. Wiles v. Palm Springs Grill LLC, et al., Case No. 15-cv-81597-KAM.

D. To file a Joint Motion for Approval of Settlement and Dismissal with Prejudice in the lawsuit titled Rebecca C. Wiles v. Palm Springs Grill LLC, et al., Case No. 15-cv-81597-KAM.

E. To complete an IRS W-9 form and to have her attorney complete an IRS W-9 form with respect to the settlement payments and to return those forms along with an executed copy of this Agreement to counsel for PSG.

F. That payment by PSG pursuant to Paragraph 3 of this Agreement is not due and payable until fourteen (14) business days after the District Court issues an Order dismissing Howell's claims in the lawsuit Rebecca C. Wiles v. Palm Springs Grill LLC, et al., Case No. 15-cv-81597-KAM, with prejudice and PSG's counsel, David A. Buchsbaum, receives the IRS W-9 forms completed and signed by Howell and her attorney. The Parties agree that no interest shall accrue on said payment.

G. That this settlement is the compromise of a disputed claim and does not constitute an admission by PSG, Robert Ciceroni, or Carran Schneider of any violation of any federal, state, or local statute or regulation, or any violation of any of Howell's rights or of any duty owed by PSG or Robert Ciceroni, or Carran Schneider. Howell further agrees and acknowledges that upon payment of the consideration set forth in Section 3 below, she has been fully paid for all hours worked, and that, except for payment under paragraph 3, no other compensation, vacation pay, sick pay, overtime pay, liquidated damages, or any other money is owed to her.

H. That she represents and warranties that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of PSG, Robert Ciceroni, and/or Carran Schneider to any persons, including but not limited to current or former customers and employees, or members of the media.

I. To waive her right to future employment with PSG or any business owned in whole or in part by Robert Ciceroni or Carran Schneider and to agree not to knowingly reapply for employment with PSG or any business owned in whole or in part by Robert Ciceroni or Carran Schneider. Howell agrees and acknowledges that her signature on this Agreement is grounds for immediate rejection of any application for employment submitted by her. Howell also expressly agrees that should PSG, Robert Ciceroni, or Carran Schneider acquire an entity for which she is employed that she will resign effective immediately and that she has no rights to employment by PSG, Robert Ciceroni, or Carran Schneider.

J. Not to communicate the terms, conditions, or contents of this Agreement to any person or entity in any manner, whether directly or indirectly, without express written consent from PSG authorizing the particular disclosure requested, except that she may communicate the terms of this Agreement to her spouse, financial advisors, and legal counsel, all of whom shall be advised by her before such disclosure that the terms of the Agreement shall not be disclosed by them to any person, unless required by law. Any unauthorized disclosure by such persons shall be deemed a breach of this Agreement by Howell. This provision shall not, however, prohibit Howell from disclosing the terms and conditions of this Agreement if (a) required to do so by court order, provided that any court-ordered disclosure shall only be made to the extent ordered, and only after notice has been given in writing by Howell to PSG in order to allow PSG reasonable and sufficient time to obtain an appropriate protective order preventing or restricting such disclosure; (b) as may be necessary to accomplish the filing of income tax returns or to fulfill any other legal obligations to the Internal Revenue Service or other federal or state taxing authorities; or (c) as may be necessary to enforce the terms of this Agreement. Howell, however, may disclose that her claims against PSG, Robert Ciceroni, and Carran Schneider have been resolved by agreement of the parties. Howell agrees that PSG shall be entitled to liquidated damages in the amount of $5,000.00 per violation proven in any civil action, in addition to any other legal or equitable remedies, in the event that Howell breaches this provision. The payment by Howell of liquidated damages pursuant to this paragraph does not release Howell from the promises she has made in this Agreement.

K. That Howell is solely and entirely responsible for the payment of any and all taxes, if any, which may be found to be due on the amounts paid under Section 3 below. Howell also agrees to indemnify and hold PSG harmless against any claim for taxes or related penalties or interest, and attorneys' fees and costs expended by PSG in connection with the amounts paid under Section 3 below in any action against Howell necessary for indemnification of such taxes, penalties, or interest. Howell acknowledges that PSG has not made any representation regarding the taxability of the settlement funds.

3. For and in consideration of the promises outlined in Paragraph 2 of this Agreement, PSG agrees to pay Howell the total sum of Two Thousand Eight Hundred Thiety-Three Dollars and 33 Cents ($2,833.33), payment to be made as follows:

    A.    $1,700.00 payable to Howell; and

    B.    $1,133.33 payable to Kenner + Imparato PLLC, representing attorneys' fees and costs.

Other than the amount set forth in 3.B. above, each party is to bear its own attorney's fees and costs in this matter.

4.    In the event that any party commences an action for damages, injunctive relief, or to enforce the provisions of the Agreement, the prevailing party in any such action shall be entitled to an award of its reasonable attorney's fees and all costs including appellate fees and costs, incurred in connection therewith as determined by the court in any such action.

5.    Medicare Obligations:

    A.    This settlement is based upon a good faith determination of the parties to resolve a disputed claim. The parties have not shifted responsibility of medical treatment to Medicare in contravention of 42 U.S.C. Sec. 1395y(b). The parties resolved this matter in compliance with both state and federal law. The parties made every effort to adequately protect Medicare's interest and incorporate such into the settlement terms.

    B.    Howell warrants that Howell is not a Medicare beneficiary as of the date of this release. Because Howell is not a Medicare recipient as of the date of this release, no conditional payments have been made by Medicare.

    C.    Howell will indemnify, defend and hold PSG harmless from any and all claims, liens, Medicare conditional payments and rights to payment, known or unknown. If any governmental entity, or anyone acting on behalf of any governmental entity, seeks damages including multiple damages from PSG relating to payment by such governmental entity, or anyone acting on behalf of such governmental entity, relating to Howell's alleged injuries, claims or lawsuit, Howell will defend and indemnify PSG, and hold PSG harmless from any and all such damages, claims, liens, Medicare conditional payments and rights to payment, including any attorneys' fees sought by such entities.

6.    No cancellation, modification, amendment, deletion, addition, or other changes in this Agreement or any provision hereof or any right herein provided shall be effective for any purpose unless specifically set forth in a subsequent written agreement signed by Howell and an authorized representative of PSG.

7.    If any provision(s) of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be curtailed and limited only to the extent necessary to bring it within the requirements of the law. In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof. In such case, the remaining

provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

8. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach of any party, nor shall any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

9. The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement. Venue for any action for damages, injunctive relief, or to enforce the provisions of the Agreement, shall be West Palm Beach County, Florida.

10. In signing this Agreement, Howell agrees and certifies that: (a) she has carefully read and fully understands the provisions of this Agreement; (b) that PSG and Robert Ciceroni have, by this Agreement, advised her to consult with an attorney of her choice before signing this Agreement, and she has had an opportunity to do so; (c) she has been allowed a reasonable period of time in which to consider this Agreement before signing; (d) she agrees to the terms of this Agreement knowingly, voluntarily and without intimidation, coercion or pressure, and she intends to be legally bound by the Agreement; and (e) having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this Settlement Agreement, Howell agrees that this Settlement Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

11. This Agreement is executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument. Electronic and facsimile signatures shall be deemed effective as original signatures.

12. PSG has duly authorized this Agreement and authorized the signatory below to sign on its behalf as a valid and binding act of PSG, and PSG does intend to be so bound by this Agreement

DATE: Jan 25, 2017          Signature: *Ashley Howell*
                                       Ashley Howell (Jan 25, 2017)
                                       Ashley Howell

DATE: 1-12-17               Signature: _____
                                       For Palm Springs Grill, LLC